1

2

3

4

5

6                        **UNITED STATES DISTRICT COURT**

7                              **DISTRICT OF NEVADA**

8

9    JESSICA BARRAZA,

10            Petitioner,                                    2:14-cv-01185-APG-PAL

11   vs.
                                                             **ORDER**
12   J. GENTRY, *et al.*,

13            Respondents.

14   _____/

15

16   Introduction

17           This action is a petition for writ of habeas corpus by Jessica Barraza, who was convicted of

18   second degree murder in a Nevada court and is serving a prison sentence on that conviction.  The

19   action is before this Court with respect to the merits of the claims remaining in Barraza's habeas

20   petition.  The Court will deny the petition.

21   Background

22           Barraza was convicted, on November 2, 2007, in Nevada's Eighth Judicial District Court, in

23   Clark County, of second degree murder with use of a deadly weapon.  *See* Judgment of Conviction,

24   Exhibit 1 (ECF No. 11-1).  She was sentenced to life in prison with the possibility of parole after 10

25   years for the murder, and a consecutive term of life in prison with the possibility of parole after 10

26   years for the use of a deadly weapon.  *See id.*

1   The Nevada Supreme Court affirmed the judgment of conviction on August 3, 2009.  *See*

2   Order of Affirmance, Exhibit 2 (ECF No. 11-2).  The Nevada Supreme Court then denied Barraza's

3   petitions for rehearing and en banc reconsideration.  *See* Petition for Rehearing, Exhibit 95 (ECF

4   No. 34-11); Order Denying Rehearing, Exhibit 96 (ECF No. 34-12); Petition for En Banc

5   Reconsideration, Exhibit 97 (ECF No. 34-13); Order Denying En Banc Reconsideration, Exhibit 100

6   (ECF No. 34-16).  The United States Supreme Court denied Barraza's petition for writ of certiorari.

7   *See* Notice of Denial of Petition for Writ of Certiorari, Exhibit 103 (ECF No. 35-3).

8       On August 19, 2010, Barraza filed a post-conviction petition for writ of habeas corpus in the

9   state district court.  *See* Petition for Writ of Habeas Corpus (Post-Conviction), Exhibit 106 (ECF No.

10  35-6).  Counsel was appointed for Barraza, and, with counsel, Barraza filed a supplemental habeas

11  petition.  *See* Supplemental Post-Conviction Petition for Writ of Habeas Corpus, Exhibit 110 (ECF

12  No. 35-10).  The state district court denied the petition in a written order on November 26, 2012.

13  *See* Findings of Fact, Conclusions of Law and Order, Exhibit 116 (ECF No. 35-16).  Barraza

14  appealed, and the Nevada Supreme Court affirmed on March 12, 2014.  *See* Order of Affirmance,

15  Exhibit 127 (ECF No. 36-11).

16      This Court received Barraza's federal habeas petition, along with three briefs in support of

17  the petition, initiating this action *pro se*, on July 18, 2014 (ECF Nos. 1, 1-1, 1-2, and 1-3).  Barraza's

18  petition asserts the following 13 claims:

19      1.   Barraza's trial counsel was ineffective, in violation of her federal
             constitutional rights, for failing to object to an improper jury instruction
20           pertaining to the deadly weapon enhancement.  *See* Petition for Writ of
             Habeas Corpus (ECF No. 1), pp. 3-4; Brief in Support of Writ of Habeas
21           Corpus (ECF No. 1-1), pp. 16-26; Supplemental Brief One in Support of Writ
             of Habeas Corpus (ECF No. 1-2), pp. 4-9.
22
        2.   Barraza's trial counsel was ineffective, in violation of her federal
23           constitutional rights, for failing to object to an improper jury instruction
             pertaining to involuntary and voluntary manslaughter.  *See* Petition for Writ
24           of Habeas Corpus, pp. 5-6; Brief in Support of Writ of Habeas Corpus, pp. 27-
             38; Supplemental Brief One in Support of Writ of Habeas Corpus, pp. 9-14;
25           Supplemental Brief Two in Support of Writ of Habeas Corpus (ECF No. 1-2),
             pp. 25-37.
26

2

3. Barraza's trial counsel was ineffective, in violation of her federal constitutional rights, for failing to object to an improper jury instruction pertaining to voluntary manslaughter. *See* Petition for Writ of Habeas Corpus, pp. 7-8; Brief in Support of Writ of Habeas Corpus, pp. 39-45; Supplemental Brief One in Support of Writ of Habeas Corpus, pp. 14-18.

4. Barraza's trial counsel was ineffective, in violation of her federal constitutional rights, for failing to object to improper witness testimony. *See* Petition for Writ of Habeas Corpus, pp. 9-10; Brief in Support of Writ of Habeas Corpus, pp. 45-53; Supplemental Brief One in Support of Writ of Habeas Corpus, pp. 18-20.

5. The state district court violated Barraza's federal constitutional rights by denying her an evidentiary hearing on her post-conviction petition for writ of habeas corpus. *See* Petition for Writ of Habeas Corpus, pp. 11-12; Brief in Support of Writ of Habeas Corpus, pp. 54-58; Supplemental Brief One in Support of Writ of Habeas Corpus, pp. 20-21.

6. The state district court violated Barraza's federal constitutional rights by finding that claims made in her post-conviction petition for writ of habeas corpus were barred by the law of the case doctrine. *See* Petition for Writ of Habeas Corpus, pp. 13-14; Brief in Support of Writ of Habeas Corpus, pp. 58-64; Supplemental Brief One in Support of Writ of Habeas Corpus, pp. 22-23.

7. Barraza's appellate counsel was ineffective, in violation of her federal constitutional rights, regarding jury instruction 15 and instructions on voluntary manslaughter. *See* Petition for Writ of Habeas Corpus, pp. 15-16; Brief in Support of Writ of Habeas Corpus, pp. 64-65.

8. Barraza's federal constitutional rights were violated because "[t]he State commented on Barraza's decision not to testify while addressing an evidentiary objection to testimony presented by defense counsel." *See* Petition for Writ of Habeas Corpus, pp. 17-18; Supplemental Brief Two in Support of Writ of Habeas Corpus, pp. 10-12.

9. Barraza's federal constitutional rights were violated because the trial court "permitted the State to ask questions concerning uncharged misconduct allegedly committed by Barraza without establishing the admissibility of such evidence at a *Petrocelli* Hearing, and no cautionary instruction was given." *See* Petition for Writ of Habeas Corpus, pp. 19-20; Supplemental Brief Two in Support of Writ of Habeas Corpus, pp. 12-15.

10. Barraza's federal constitutional rights were violated because "[t]he State presented victim impact evidence during the guilt phase of the trial for the purposes of invoking sympathy and emotional responses from jurors." *See* Petition for Writ of Habeas Corpus, pp. 21-22; Supplemental Brief Two in Support of Writ of Habeas Corpus, pp. 15-17.

3

11. Barraza's federal constitutional rights were violated because a detective "gave extensive testimony concerning his beliefs as to Barraza's truthfulness, mental state and other factual matters that should have been properly left to the jury for its determination." *See* Petition for Writ of Habeas Corpus, pp. 23-24; Supplemental Brief Two in Support of Writ of Habeas Corpus, pp. 17-20.

12. Barraza's federal constitutional rights were violated because evidence was admitted at trial concerning statements made by an individual in response to questions asked by a police officer, though the individual was not subject to confrontation or cross-examination. *See* Petition for Writ of Habeas Corpus, pp. 25-26; Supplemental Brief Two in Support of Writ of Habeas Corpus, pp. 20-25.

13. Barraza's federal constitutional rights were violated because she was not sentenced under the amended version of NRS 193.165. *See* Petition for Writ of Habeas Corpus, pp. 27-28; Supplemental Brief Two in Support of Writ of Habeas Corpus, pp. 43-49.

On December 1, 2015, respondents filed a motion to dismiss (ECF No. 4), arguing that Barraza had not complied with Rule 2 of the Rules Governing Section 2254 Cases in the United States District Courts, and that her petition was vague. The Court denied that motion, and directed respondents to further respond to Barraza's petition. *See* Order entered June 2, 2015 (ECF No. 9).

On July 14, 2015, respondents filed a second motion to dismiss (ECF No. 10), asserting that various of the claims in Barraza's petition fail to state a claim upon which relief could be granted. On December 11, 2015, the Court granted that motion in part and denied it in part. *See* Order entered December 11, 2015 (ECF No. 18). The Court dismissed Claims 5, 6 and 9, because they do not state claims upon which relief could be granted in this federal habeas corpus action. *See id.*

On February 9, 2016, respondents filed an answer, responding to Barraza's remaining claims (ECF No. 19).

Barraza then filed a motion for appointment of counsel, which was denied (ECF Nos. 21, 23), and a "Motion for Transcripts at State Expense," which was granted (ECF Nos. 24, 25). The Court ordered respondents to expand the record. *See* Order entered April 20, 2016 (ECF No. 25). In accordance with the Court's order, on May 19, 2016, respondents filed several volumes of exhibits, representing the state-court record (ECF Nos. 26-32, 34-36).

4

Also on May 19, 2016, counsel -- apparently retained by Barraza -- appeared for Barraza. *See* Notice of Appearance of Counsel (ECF No. 33).

On September 23, 2016, Barraza filed a reply to respondents' answer (ECF No. 39).

On June 19, 2017, the Court ordered the respondents to further expand the record, by filing as an exhibit a copy of the video recording of Barraza's statement to the police, which was admitted into evidence at her trial as State's Exhibit 32. *See* Order entered June 19, 2017 (ECF No. 40); *see also* Transcript of Trial, August 22, 2007, Exhibit 71, pp. 115-16 (ECF No. 30-1, pp. 116-17). Respondents complied with that order on July 10, 2017, by filing a copy of the video recording of Barraza's statement to the police. *See* Notice of Manual Filing (ECF No. 41).

Discussion

Standard of Review

28 U.S.C. § 2254(d) sets forth the standard of review applicable in this case under the Antiterrorism and Effective Death Penalty Act (AEDPA):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685,

694 (2002)).  A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 75 (quoting *Williams*, 529 U.S. at 413).  The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable.  *Id.* (quoting *Williams*, 529 U.S. at 409).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing standard as "a difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

"[W]hen a state court issues an order that summarily rejects without discussion all the claims raised by a defendant, including a federal claim that the defendant subsequently presses in a federal habeas proceeding, the federal habeas court must presume (subject to rebuttal) that the federal claim was adjudicated on the merits." *Johnson v. Williams*, 133 S. Ct. 1088, 1091 (2013) (citing *Harrington*, 562 U.S. at 99.).  When the state court has denied a federal constitutional claim on the merits without explanation -- as is the case with respect to many of the claims asserted by Barraza -- the federal habeas court "must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the United States Supreme Court]." *Harrington*, 562 U.S. at 102.

6

<u>Claim 1</u>

In Claim 1, Barraza claims that her trial counsel was ineffective, in violation of her federal constitutional rights, for failing to object to an improper jury instruction pertaining to the deadly weapon enhancement. *See* Petition for Writ of Habeas Corpus (ECF No. 1), pp. 3-4; Brief in Support of Writ of Habeas Corpus (ECF No. 1-1), pp. 16-26; Supplemental Brief One in Support of Writ of Habeas Corpus (ECF No. 1-2), pp. 4-9. In essence, Barraza claims that the trial court usurped the jury's role as fact-finder by instructing the jury that a knife is a deadly weapon as a matter of law, and that her trial counsel should have objected. *See id.*

On her direct appeal, Barraza asserted a related claim: that the trial court usurped the jury's role as fact-finder by instructing the jury that a knife is a deadly weapon (*see* Appellant's Opening Brief, Exhibit 91, pp. 37-43 (ECF No. 34-7, pp. 49-55)). The Nevada Supreme Court ruled on that claim as follows:

> The district court's deadly weapon instruction read as follows:
>
> > "Deadly weapon" means any instrument which, if used in the ordinary manner contemplated by its design and construction, will or is likely to cause bodily harm or death.
>
> > You are instructed that a knife is a deadly weapon.
>
> Barraza contends that this instruction improperly removed from the jury's consideration the factual issue of whether the particular knife used in this case qualifies as a deadly weapon. Barraza did not raise this objection at trial. On appeal, we thus review her challenge to this instruction for plain error. *Gaxiola v. State*, 121 Nev. 638, 648, 119 P.3d 1225, 1232 (2005) (noting that, while the failure to object to a jury instruction at trial generally precludes appellate review, this court may address an erroneous instruction if the error was plain and affected the defendants' substantial rights).
>
> > *      *      *
>
> The district court based its deadly weapon instruction on the definitions provided in NRS 193.165(6), Nevada's deadly weapon enhancement statute. NRS 193.165(6)(b) defines deadly weapon to mean "[a]ny weapon, device, instrument, material or substance which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing substantial bodily harm or death." Citing *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), Barraza argues that whether a knife qualifies as a deadly weapon presents a question of fact that the jury must resolve under all circumstances, such that instructing the jury as a matter of

law that the knife used to kill the victim in this case was a deadly weapon amounted to plain error.

We disagree for three reasons. First, the error is not as clear under current law as Barraza asserts. *Compare Hernandez v. State*, 118 Nev. 513, 528 n.31, 50 P.3d 1100, 1111 n.31 (2002) (citing *Steese v. State*, 114 Nev. 479, 499, 960 P.2d 321, 334 (1998) and *Thomas v. State*, 114 Nev. 1127, 1146, 967 P.2d 1111, 1123 (1998) and noting with apparent approval the instructions they reviewed with respect to certain knives being deadly weapons as a matter of law) *with Knight v. State*, 116 Nev. 140, 147, 993 P.2d 67, 72 (2000) (noting in a related context that "the determination of whether a common steak knife is a dangerous or deadly weapon is a question of fact for the jury" but finding the instructional error harmless). Second, the knife Barraza used to kill the victim in this case was a butterfly knife which when closed, conceals its blade and when opened has hand-guards that lock the blade in place and prevent the wielder's hand from slipping onto the blade if used to stab. While not dispositive, these are characteristic of knives that qualify as deadly weapons. *See Knight*, 116 Nev. at 146, 993 P.2d at 72. Third, the deadly properties of this particular knife in this particular case, given the knife's construction and the mortal stab wounds it was used to inflict, were neither contested, nor seriously open to contest (which may explain Barraza's failure to object to the instruction in the district court). *See State v. Graham*, 650 S.E.2d 639, 648 (N.C. App. 2007) (upholding conviction in a case in which the jury was instructed a particular knife was a deadly weapon given the uncontroverted evidence that the knife was used to inflict severe life-threatening injuries). Under these circumstances, the error, if any, in the jury instruction was harmless beyond a reasonable doubt. *State v. Donk*, 181 P.3d 508, 511-12 (Idaho Ct. App. 2007) (canvassing cases and noting that failure to submit a sentencing enhancement to the jury may constitute harmless error where, as here, the record establishes the elements of the enhancement with overwhelming evidence).

Order of Affirmance, Exhibit 2, pp. 2-4 (ECF No. 11-2, pp. 3-5).

In her state habeas action, Barraza asserted the claim addressed here: that her trial counsel was ineffective for failing to object to the deadly-weapon instruction. On the appeal in Barraza's state habeas action, the Nevada Supreme Court ruled on that claim as follows:

... [A]ppellant argues that her trial counsel was ineffective for failing to object when the district court instructed the jury that a knife is a deadly weapon and when the State referred to that instruction in its closing argument. Appellant fails to demonstrate that she was prejudiced. Appellant fails to demonstrate a reasonable probability of a different outcome at trial had counsel objected to the instruction or to the State's reference to the instruction as the evidence demonstrated that appellant intentionally used the knife in a deadly and dangerous manner, as she stabbed the victim causing the victim to die. *See* NRS 193.165(6)(b); *see also Barraza v. State*, Docket No. 50623 (Order of Affirmance, August 3, 2009). Therefore, the district court did not err in denying this claim without conducting an evidentiary hearing.

Order of Affirmance, Exhibit 127, p. 2 (ECF No. 36-11, p. 3).

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court propounded a two prong test for claims of ineffective assistance of counsel: the petitioner must demonstrate (1) that the defense attorney's representation "fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694. A court considering a claim of ineffective assistance of counsel must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id*. at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. And, to establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id*. at 693.

Where a state court has adjudicated a claim of ineffective assistance of counsel under *Strickland*, establishing that the decision was unreasonable under the AEDPA is especially difficult. *See Harrington*, 562 U.S. at 104-05. In *Harrington*, the Supreme Court instructed:

> The standards created by *Strickland* and § 2254(d) are both highly deferential, [*Strickland*, 466 U.S. at 689]; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, [*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)]. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at 123, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 105; *see also Cheney v. Washington*, 614 F.3d 987, 994-95 (9th Cir. 2010) (acknowledging the double deference required for state court adjudications of *Strickland* claims).

The Nevada Supreme Court's ruling on this claim was reasonable. At trial, it was beyond any reasonable dispute that Barraza stabbed Wilkins with a knife, and that Wilkins died as a result of that stabbing. *See*, *e.g.*, Testimony of Renee Manuel, Trial Transcript, August 21, 2017, Exhibit 70,

pp. 54-56 (ECF No. 29-1, pp. 55-57) (eyewitness testified she saw Barraza stab Wilkins with a knife); Testimony of Araceli Flores, Trial Transcript, August 21, 2017, Exhibit 70, pp. 97-101 (ECF No. 29-1, pp. 98-102) (eyewitness testified she saw Barraza stab Wilkins with a knife); Testimony of Lary Simms, Trial Transcript, August 21, 2017, Exhibit 70, pp. 36-37 (ECF No. 29-1, pp. 37-38) (autopsy revealed that Wilkins died from stab wound to the abdomen). Furthermore, undisputed evidence at trial showed that the stab wound that killed Wilkins passed all the way through her liver and damaged a blood vessel on the back side of the liver. *See* Testimony of Lary Simms, Trial Transcript, August 21, 2017, Exhibit 70, pp. 20-21 (ECF No. 29-1, pp. 21-22).

In light of the evidence, and taking into consideration the Nevada Supreme Court's ruling on the substantive issue on Barraza's direct appeal (albeit on plain error review), this Court determines that it was reasonable for the state supreme court to conclude that any objection by Barraza's trial counsel, with respect to the jury instruction regarding use of a deadly weapon, would not have changed the outcome of Barraza's trial.

The state court ruling was not contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court, nor was it based on an unreasonable determination of the facts in light of the evidence. The Court will deny habeas corpus relief with respect to Claim 1.

Claims 2, 3 and 7

In Claims 2, 3 and 7, Barraza claims that her constitutional rights were violated, on account of ineffective assistance of her trial and appellate counsel with respect to instructions given to the jury regarding manslaughter and murder. Specifically, in Claim 2, Barraza claims that her trial counsel was ineffective for failing to object to a jury instruction that improperly allowed the jury to find that she committed second degree murder without a finding of malice aforethought. *See* Petition for Writ of Habeas Corpus, pp. 5-6; Brief in Support of Writ of Habeas Corpus, pp. 27-38; Supplemental Brief One in Support of Writ of Habeas Corpus, pp. 9-14; Supplemental Brief Two in Support of Writ of Habeas Corpus (ECF No. 1-2), pp. 25-37. In Claim 3, Barraza claims that her

trial counsel was ineffective for failing to request a jury instruction that accurately set forth the

State's burden to prove the absence of heat of passion in order to convict her of second degree

murder. *See* Petition for Writ of Habeas Corpus, pp. 7-8; Brief in Support of Writ of Habeas

Corpus, pp. 39-45; Supplemental Brief One in Support of Writ of Habeas Corpus, pp. 14-18. And,

in

Claim 7, Barraza claims that her appellate counsel was ineffective in not raising these issues on her

direct appeal. *See* Petition for Writ of Habeas Corpus, pp. 15-16; Brief in Support of Writ of Habeas

Corpus, pp. 64-65.

Barraza asserted these claims in her state habeas corpus action, and, on the appeal in that

action, the Nevada Supreme Court ruled as follows:

> ... [A]ppellant argues that her trial counsel was ineffective for failing to object
> to instruction 15, which she asserts improperly instructed the jury regarding voluntary
> and involuntary manslaughter. Appellant argues that the instruction improperly
> allowed the jury to convict appellant without finding that she acted with malice and
> that the instruction relieved the State from its burden to prove malice. Appellant also
> argues that counsel was ineffective for failing to object when the State referred to the
> challenged instruction in its closing argument in a confusing manner. Appellant fails
> to demonstrate that her counsel's performance was deficient or that she was
> prejudiced. The challenged instruction was a recitation of NRS 200.070, which
> defines involuntary manslaughter. Moreover, additional instructions correctly
> instructed the jury regarding voluntary manslaughter, malice, and the State's burden
> of proving the charges beyond a reasonable doubt. *See* NRS 175.211; NRS 200.020;
> NRS 200.040; NRS 200.050; NRS 200.060. As jury instructions are meant to be read
> together, *see Butler v. State*, 120 Nev. 879, 903, 102 P.3d 71, 88 (2004), and the
> additional instructions correctly informed the jury regarding the challenged topics,
> appellant fails to demonstrate that her counsel was objectively unreasonable for
> declining to object to instruction 15 on these bases. In addition, counsel objected to
> the challenged statements made by the State in closing arguments and the objection
> was sustained. Appellant fails to demonstrate a reasonable probability of a different
> outcome at trial had counsel objected to the challenged instruction as there was
> substantial evidence presented that appellant acted with malice when stabbing the
> victim. *See Keys v. State*, 104 Nev. 736, 738, 766 P.2d 270, 271-72 (1988).
> Therefore, the district court did not err in denying this claim without conducting an
> evidentiary hearing.

> ... [A]ppellant argues that her trial counsel was ineffective for failing to argue
> that instruction 15 erroneously permitted the jury to find her guilty based upon a
> misapplication of second-degree-felony-murder doctrine. Appellant also argues that
> counsel should have explained the second-degree-felony-murder doctrine to the jury
> in closing arguments. Appellant fails to demonstrate that her counsel's performance
> was deficient or that she was prejudiced. The challenged instruction correctly
> defined involuntary manslaughter. *See* NRS 200.070. Moreover, as acknowledged

by appellant, there was no reference at trial by either party to second-degree felony murder. As the challenged instruction was a correct statement of the law and second-degree felony murder was not espoused as a theory of liability by the State, appellant fails to demonstrate objectively reasonable counsel would have objected to the challenged instruction on the basis that it could lead to a misapplication of a doctrine not discussed in the instruction and not discussed at trial. Appellant also fails to demonstrate that objectively reasonable counsel would have attempted to explain second-degree felony murder in closing arguments under these circumstances. Appellant fails to demonstrate a reasonable probability of a different outcome at trial had she objected to instruction 15 on this basis as there was substantial evidence that she committed second-degree murder, especially in light of appellant's own statements indicating she stabbed the victim in retaliation for verbal insults. Therefore, the district court did not err in denying this claim without conducting an evidentiary hearing.

... [A]ppellant argues that her trial counsel was ineffective for failing to argue that the second-degree murder instruction was improper as the theory espoused in the instruction was not noticed. Appellant fails to demonstrate either deficiency or prejudice. Appellant fails to demonstrate that she did not receive notice of the State's theory of second-degree murder as the information provided a plain and concise statement of the essential facts as well as a citation to the statutes discussing the crime of murder with the use of a deadly weapon. *See* NRS 173.075, NRS 193.165; NRS 200.010; NRS 200.030. Therefore, the district court did not err in denying this claim without conducting an evidentiary hearing.

... [A]ppellant argues that her counsel was ineffective for failing to request a voluntary manslaughter instruction informing the jury that it was the State's burden to prove the absence of heat of passion. Appellant fails to demonstrate that her counsel's performance was deficient or that she was prejudiced. As stated previously, the district court properly instructed the jury regarding voluntary manslaughter and the State's burden to prove the charges beyond a reasonable doubt. *See* NRS 175.211; NRS 200.040; NRS 200.050; NRS 200.060. As jury instructions are meant to be read together, *see Butler*, 120 Nev. at 903, 102 P.3d at 88, appellant fails to demonstrate that her counsel was objectively unreasonable for failing to request an additional instruction regarding proof of the absence of heat of passion. Appellant fails to demonstrate a reasonable probability of a different outcome at trial had counsel requested a specific instruction regarding proof of the absence of heat of passion ... caused by a serious and highly provoking injury, or attempted injury, sufficient to excite such passion in a reasonable person." *Allen v. State*, 98 Nev. 354, 356, 647 P.2d 389, 390-91 (1982). Therefore, the district court did not err in denying this claim without conducting an evidentiary hearing.

*   *   *

Appellant argues that her appellate counsel was ineffective for failing to "federalize" claims regarding the ... voluntary manslaughter instructions on direct appeal, and thereby failed to preserve these claims for federal court review. Appellant fails to demonstrate that her counsel's performance was deficient or that she was prejudiced. Appellant fails to demonstrate that she would have gained a more favorable standard of review on direct appeal had her appellate counsel raised arguments under federal laws. *See Browning v. State*, 120 Nev. 347, 365, 91 P.3d 39, 52 (2004). Appellant fails to demonstrate a reasonable likelihood of success on

appeal had counsel raised further arguments based upon federal laws.  Therefore, the district court did not err in denying this claim without conducting an evidentiary hearing.

Order of Affirmance, Exhibit 127, pp. 2-6 (ECF No. 36-11, pp. 3-7).

The Nevada Supreme Court decision regarding these claims was reasonable.  As the Nevada Supreme Court ruled, when read in their entirety, the jury instructions given at Barraza's trial informed the jury that the State carried the burden of proving all the elements of second degree murder -- including malice aforethought and the absence of heat of passion -- beyond a reasonable doubt.  *See* Jury Instructions, Exhibit 75 (ECF No. 31-4), Instructions 5, 6, 11, 12, 13, 15A and 26.  To the extent that the Nevada Supreme Court ruled that, as a matter of Nevada state law, the jury instructions were accurate, that ruling is authoritative and binding in this federal habeas corpus action.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law … binds a federal court sitting in habeas corpus.").  Barraza does not show that her counsel erred in not asserting any federal basis for an objection to the jury instructions that were given, or supporting the giving of any different jury instruction.

Furthermore, even if, arguably, Barraza's counsel should have objected to the instructions, or should have offered some other instruction, regarding murder and manslaughter, there was strong evidence that Barraza killed Wilkins with malice aforethought and in the absence of heat of passion, and it was reasonable of the state courts to find that Barraza was not prejudiced.  Renee Manuel was an eyewitness; she testified that she saw Barraza, using a knife, slash Wilkins on her arm and then stab her on her side.  *See* Testimony of Renee Manuel, Trial Transcript, August 21, 2017, Exhibit 70, pp. 54-56, 64-66, 69-70 (ECF No. 29-1, pp. 55-57, 65-67, 70-71).  Manuel testified that, while Barraza was attacking Wilkins with a knife, Wilkins was moving back, away from Barraza, not

fighting back, attempting to defend herself, and saying "stop." *See id.* at 55-56 (ECF No. 29-1, pp. 56-57). Manuel testified that she did not observe Wilkins with a knife. *See id.* at 84-85 (ECF No. 29-1, pp. 85-86). Araceli Flores was the other eyewitness to the stabbing; she testified that she observed Barraza take out a knife from behind her back, cut Wilkins on the hand, and then stab her. *See* Testimony of Araceli Flores, Trial Transcript, August 21, 2017, Exhibit 70, pp. 98-100 (ECF No. 29-1, pp. 99-101). Flores also testified that she did not see Wilkins with a knife. *See id.* at 103-04 (ECF No. 29-1, pp. 104-05). Flores testified that when Barraza was attacking Wilkins with a knife, Wilkins was backing away from Barraza, and was saying "I'm joking, I'm joking." *Id.* at 100, 104 (ECF No. 29-1, pp. 101, 105). After she was stabbed, before she died, Wilkins said to a police officer: "I can't believe the bitch stabbed me. I can't believe she did this." *See* Testimony of Kenneth Mead, Trial Transcript, August 21, 2007, Exhibit 70, p. 127 (ECF No. 29-1, p. 128). Also, Flores testified, as follows, about what Barraza did after she stabbed Wilkins:

> Q.     What did Jessica do after she stabbed Crystal?
>
> A.     She asked for the bicycle of a kid who was there and took off.
>
> Q.     Okay. If I use the word "dap," do you know what that means?
>
> A.     What do you mean?
>
> Q.     Okay. I'm going to show you, and you tell me if you know what this means. Okay? If two people do this -- which is touching hands together -- what does this mean?
>
> A.     That's a greeting.
>
> Q.     Okay. Did Jessica do this to you as she was leaving on the bike?
>
> A.      Yes.
>
> Q.     And that's just like a greeting like hello, goodbye?
>
> A.     Yes.
>
> Q.     Okay. And is it like a good greeting? Does it have good connotations? Bad connotations?
>
> A.     It's just a greeting like you would with any friend. That's just how we say hello.

*Id.* at 101 (ECF No. 29-1, p. 102). After the stabbing, Barraza did not render aid or call for police or medical help; rather, she "dapped" with her friend and fled from the scene. Barraza was not located and arrested until five days later, on August 11, 2005. *See* Testimony of Robert Plummer, Trial Transcript, August 22, 2007, Exhibit 71, pp. 76-78 (ECF No. 30-1, pp. 77-79); Testimony of Ronald Rasmussen, Trial Transcript, August 23, 2007, Exhibit 72, pp. 15-17 (ECF No. 31-1, pp. 16-18). When Barraza was located by police on August 11, 2005, she ran, and the police had to chase her in order to apprehend and arrest her. *See* Testimony of Robert Plummer, Trial Transcript, August 22, 2007, Exhibit 71, pp. 76-78 (ECF No. 30-1, pp. 77-79).

When interviewed by a police officer after her arrest, Barraza did not claim that the stabbing was in self-defense, and she did not describe any provocation that would give rise to heat of passion. *See* Video Recording, State's Exhibit 32 (manually filed on July 10, 2017). Barraza did not claim that Wilkins threatened her with a knife, or in any other manner. *See id.* Rather, Barraza explained that Wilkins had been annoying and disrespecting her, and she "just wanted to scare her," but Wilkins would not back off and stop bothering her. *See id.*

The evidence at trial firmly supported a finding of malice on the part of Barraza, and a finding that Barraza acted in the absence of heat of passion. In light of the strong evidence, the Nevada Supreme Court reasonably concluded that any shortcoming of Barraza's trial and appellate counsel, vis-a-vis the jury instructions regarding murder and manslaughter, was without prejudice to Barraza. There is no reasonable probability that, but for any arguable error by trial counsel, the result of Barraza's trial would have been different. There is no reasonable probability that had Barraza's appellate counsel raised these issues on her direct appeal, the result of the appeal would have been different.

The state courts' rulings on these claims were not contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court, and were not based on an unreasonable determination of the facts in light of the evidence. This Court will deny habeas corpus relief with respect to Claims 2, 3 and 7.

Claims 4 and 11

In Claim 4, Barraza claims that her trial counsel was ineffective, in violation of her federal constitutional rights, for failing to object to improper witness testimony. *See* Petition for Writ of Habeas Corpus, pp. 9-10; Brief in Support of Writ of Habeas Corpus, pp. 45-53; Supplemental Brief One in Support of Writ of Habeas Corpus, pp. 18-20. In particular, Barraza claims that her trial counsel should have objected to testimony of Detective McNett. *See id.* In Claim 11, Barraza claims that her federal constitutional rights were violated because the detective "gave extensive testimony concerning his beliefs as to Barraza's truthfulness, mental state and other factual matters that should have been properly left to the jury for its determination." *See* Petition for Writ of Habeas Corpus, pp. 23-24; Supplemental Brief Two in Support of Writ of Habeas Corpus, pp. 17-20.

On her direct appeal, Barraza asserted the related claim that the trial court erred in admitting the testimony of Officer McNett, and the Nevada Supreme Court denied that claim without discussion. *See* Appellant's Opening Brief, Exhibit 91, pp. 17-20 (ECF No. 34-7, pp. 29-32); Order of Affirmance, Exhibit 2, p. 1 n.1 (ECF No. 11-2, p. 2).

In her state habeas action, Barraza asserted the claim of ineffective assistance of her trial counsel, and, on the appeal in that action, the Nevada Supreme Court ruled as follows:

> ... [A]ppellant argues that her counsel was ineffective for failing to object when a State's witness commented on her truthfulness and her state of mind during a police interrogation. Appellant fails to demonstrate that her trial counsel's performance was deficient or that she was prejudiced. The challenged testimony was considered on direct appeal and this court concluded that the underlying claim was without merit. *Barraza v. State*, Docket No. 50623 (Order of Affirmance, August 3, 2009). Given the substantial evidence of appellant's guilt, including appellant's own statements that she stabbed the victim because she could not allow a person to talk to her in such a disrespectful manner, appellant fails to demonstrate a reasonable probability of a different outcome at trial had counsel objected to the challenged statements. Therefore, the district court did not err in denying this claim without conducting an evidentiary hearing.

Order of Affirmance, Exhibit 127, pp. 5-6 (ECF No. 36-11, pp. 6-7).

The trial testimony at issue here is testimony of Mark McNett, a detective with the Las Vegas Metropolitan Police Department who interviewed Barraza after she was arrested, regarding

the interview, the techniques he used in conducting it, and his beliefs that Barraza was not truthful in the interview. *See* Testimony of Mark McNett, Trial Transcript, August 22, 2007, Exhibit 71, pp. 97-104, 116-25, 153-59 (ECF No. 30-1, pp. 98-105, 117-26, 154-60).

The Nevada Supreme Court's ruling, on Barraza's direct appeal, that McNett's testimony was not improper as a matter of state law, is authoritative and binding in this federal habeas corpus action. *See Estelle*, 502 U.S. at 67-68; *Bradshaw*, 546 U.S. at 76. And, in light of that ruling, it is plain that Barraza's trial counsel was not ineffective for failing to object to McNett's testimony on state-law grounds, and there was no prejudice to Barraza as a result of his failure to do so.

Barraza does not make a serious argument that McNett's testimony violated her federal constitutional rights, and this Court determines that it did not. "It is well settled that a state court's evidentiary ruling, even if erroneous, is grounds for federal habeas relief only if it renders the state proceedings so fundamentally unfair as to violate due process." *Spivey v. Rocha*, 194 F.3d 971, 977-78 (9th Cir. 1999). To show that improper admission of evidence violated her due process rights, the federal habeas petitioner must demonstrate that the admission of the challenged evidence "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Patterson v. New York*, 432 U.S. 197, 202 (1977) (internal citations and quotations omitted); *see also Montana v. Egelhoff*, 518 U.S. 37, 43 (1996). Barraza does not make a showing approaching this standard.

Under the deferential standard of review mandated by the AEDPA, the Nevada Supreme Court's denial of Barraza's due process claim regarding McNett's testimony is not contrary to or an unreasonable application of clearly established federal law and was not based on an unreasonable determination of the facts. Barraza does not show that the Supreme Court has ever expressly held it to be a violation of a defendant's due process rights for a police officer to testify that he felt a suspect was lying in an interview, or that any ruling of the Supreme Court must reasonably be read to lead to such a conclusion in this case. Because there is no showing that McNett's testimony was improper under state law, or as a matter of federal constitutional law, Barraza cannot demonstrate

1 that her trial counsel was ineffective for failing to object to McNett's testimony, or that she was

2 prejudiced. The Court will deny habeas corpus relief with respect to Claims 4 and 11.

3     Claim 8

4     In Claim 8, Barraza claims that her federal constitutional rights were violated because "[t]he

5 State commented on Barraza's decision not to testify while addressing an evidentiary objection to

6 testimony presented by defense counsel." *See* Petition for Writ of Habeas Corpus, pp. 17-18;

7 Supplemental Brief Two in Support of Writ of Habeas Corpus, pp. 10-12.

8     The comment at issue in this claim occurred in the following exchange in the presence of the

9 jury during the testimony of police officer Ronald Rasmussen, in the defense case, regarding

10 statements made to him by Barraza after her arrest:

11         Q.    Okay. And at some point in the patrol car, did she give you what's
known as an unsolicited statement?

12

        A.    Yes. [S]he did, sir.

13
        Q.    And could you --

14
        MS. BRIERLY [prosecutor]: Objection. Hearsay.

15
        THE COURT: Whose statement?

16
        MR. PATRICK [defense counsel]: I asked him if she gave him a statement.

17 I didn't ask what she said.

18         MS. BRIERLY: Relevance. Objection, relevance.

19         MR. PATRICK: Well, Judge, this whole line of questioning is going -- is a
prior consistent statement, rebutting Officer -- Detective McNett's allegations of

20 recent fabrications in her denial.

21         THE COURT: Okay.

22         MR. PATRICK: It's all relevant.

23         THE COURT: It's overruled. Go ahead. Ask the question again.

24 BY MR. PATRICK:

25         Q.    Sir, could you kind of explain to the jury what an unsolicited statement
is?

26

A.    An unsolicited statement is when they voluntarily talk to you. You don't ask them any questions, they just give up information on their own volition, own free will.

Q.    And do you remember what she said to you?

MS. BRIERLY:   Objection. Hearsay.

MR. PATRICK:   Judge, it's prior consistent statement, rebutting Detective McNett's statements that it -- she had recent fabrications when she talked to him and that she was in denial.

MS. BRIERLY:   That wasn't Detective McNett's statement. *There is no testimony to be inconsistent. Ms. Barraza hasn't taken the stand as of yet.*

THE COURT:   But we watched her video.

MR. PATRICK: That's right.

MS. BRIERLY:   There is no inconsistent statement at this point.

Trial Transcript, August 23, 2007, Exhibit 72, pp. 17-19 (ECF No. 31-1, pp. 18-20) (emphasis added).

Barraza moved for a mistrial based on the above-quoted comment. *See* Trial Transcript, August 23, 2007, Exhibit 72, pp. 65-68 (ECF No. 31-1, pp. 66-69). The trial court denied that motion. *See id.* Barraza's counsel stated that the defense did not wish for the trial court to give a curative instruction to the jury. *See id.*

Barraza asserted this claim on her direct appeal, and the Nevada Supreme Court denied the claim without discussion. *See* Appellant's Opening Brief, Exhibit 91, pp. 10-12 (ECF No. 34-7, pp. 22-24; Order of Affirmance, Exhibit 2, p. 1 n.1 (ECF No. 11-2, p. 2).

Barraza cites *Griffin v. California*, 380 U.S. 609 (1965), in support of this claim. *See* Petition for Writ of Habeas Corpus, pp. 17-18; Supplemental Brief Two in Support of Writ of Habeas Corpus, pp. 10-12; Reply (ECF No. 39), pp. 26-29. In *Griffin*, the Supreme Court held that a prosecutor violates the defendant's privilege against self-incrimination, under the Fifth and Fourteenth Amendments, if the prosecutor makes a comment that is "manifestly intended to call attention to the defendant's failure to testify, or is of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify." *Cook v. Schriro*, 538 F.3d 1000,

19

1021 (9th Cir. 2008) (as amended) (citation omitted); *see also United States v. Gray*, 876 F.2d 1411,

1416 (9th Cir. 1989). In *Griffin*, the defendant did not testify on the issue of guilt, and the trial court

instructed the jury that it could make certain inferences based on the defendant's failure to testify,

and, in addition, the prosecutor argued extensively to the jury about the defendant's failure to testify.

*See Griffin*, 380 U.S. at 610-11.

Barraza has not shown, beyond any possibility for fairminded disagreement, that the

prosecution committed *Griffin* error in her case. The comments of the prosecutor in this case were

nothing like those in *Griffin*. In this case, the prosecutor did not comment directly about Barraza's

failure to testify. In fact, the prosecutor's comments were not directed to the jury at all. The

prosecutor's comments were, rather, apparently good-faith argument, directed to the trial court, with

respect to an evidentiary issue. The comments in question were made before the jury knew whether

or not Barraza would testify. The comments included no statement or suggestion that the jury could

infer guilt if Barraza did not testify. Moreover, the brief comments were made in passing and were

not emphasized. The Nevada Supreme Court could reasonably have determined that there was no

*Griffin* error, because the prosecutor's remarks were not manifestly intended to call attention to

Barraza's decision whether or not to testify, and were not of such a character that the jury would

naturally and necessarily take them to be a comment on her decision whether or not to testify.

Furthermore, even assuming the jury understood the prosecutor's remarks as a comment on

Barraza's decision whether or not to testify, there was no prejudice, given the strong evidence of

Barraza's guilt (discussed above, with respect to Claims 2, 3 and 7). *Griffin* error is not structural

error, and warrants habeas relief only if it was not harmless, meaning that it had a "substantial and

injurious effect or influence in determining the jury's verdict." *Cook*, 538 F.3d at 1019 (citing

*Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)); *see also Hovey v. Ayers*, 458 F.3d 892, 912

(9th Cir. 2006) (*Griffin* error is not harmless where the comment at issue "is extensive, where an

inference of guilt from silence is stressed to the jury as a basis for the conviction, and where there is

evidence that could have supported acquittal"). In this case, the comments complained of were

isolated, brief and fleeting, they did not include any statement or suggestion that the jury could infer guilt if Barraza did not testify, and there was strong evidence of Barraza's guilt. Moreover, the trial court instructed the jury that Barraza had a constitutional right not to testify, that the jury could not draw any inference of guilt from the fact that she did not testify, and that the jury should not discuss Barraza's decision not to testify or allow it to enter into their deliberations in any way. *See* Jury Instructions, Exhibit 75 (ECF No. 31-4), Instruction 27. Under the circumstances in this case, the Nevada Supreme Court could reasonably have determined that any possible *Griffin* error was harmless.

The Nevada Supreme Court's ruling on this claim was not contrary to, or an unreasonable application of, *Griffin*, or any other Supreme Court precedent, and was not based on an unreasonable determination of the facts in light of the evidence. The Court will deny habeas corpus relief with respect to Claim 8.

Claim 10

In Claim 10, Barraza claims that her federal constitutional rights were violated because "[t]he State presented victim impact evidence during the guilt phase of the trial for the purposes of invoking sympathy and emotional responses from jurors." *See* Petition for Writ of Habeas Corpus, pp. 21-22; Supplemental Brief Two in Support of Writ of Habeas Corpus, pp. 15-17.

Barraza asserted this claim on her direct appeal. *See* Appellant's Opening Brief, Exhibit 91, pp. 15-17 (ECF No. 34-7, pp. 27-29). The Nevada Supreme Court denied the claim without discussion. *See* Order of Affirmance, Exhibit 2, p. 1 n.1 (ECF No. 11-2, p. 2).

The evidence at issue in this claim is the testimony of Kelly Hershberger, who was Wilkins' foster mother. Hershberger's testimony was as follows:

Q.   Hi Ms. Hershberger. [Where] are you from?

A.   I'm from Ohio. Small town of Delphos.

Q.   Are you familiar with Crystal Wilkins?

A.   Yes.

1          Q.     How are you familiar with Crystal?

2          A.     She was my foster daughter.

3          Q.     When did she become your foster daughter?

4          A.     She [came] to our home when she was 15 1/2.

5          Q.     How long did she stay with you?

6          MR. SCHIECK [defense counsel]: Objection.  Relevance, Your Honor.
What's the relevance?

7

8          MS. BRIERLY [prosecutor]: The relevance is Ms. Hershberger knows the
victim in this case.  She knows what -- if she's right-handed or left-handed, and she
know -- she can identify the victim, and that's relevant in this case.

9

10         THE COURT: Okay.  Go ahead.

11         THE WITNESS: I'm sorry.

12 BY MS. BRIERLY:

          Q.     How did -- how long did she stay with you?
13

14         A.     She left our home two months before she turned 19.

15         Q.     So that would be five years?  Four years?

16         A.     Four years.  Close to four years.

17         Q.     And -- she stayed with you that entire time?

18         A.     Yes.  Even though the county did --

19         MR SCHIECK:     Objection, Your Honor.  This is not relevant to the
issues that they said they were going to ask her about.

20         THE COURT:     And, and it isn't.  So I'm going to sustain that
objection, and ask that you move on.

21

22         MS. BRIERLY:     Okay, Judge.

23         THE COURT:     So don't answer that, and wait for the next question
please.

24 BY MS. BRIERLY:

25         Q.     Are you familiar with whether -- what hand -- did you see Crystal go
to school?

26         A.     Yes.

| | |
|---|---|
| 1 | Q.     And did you see here do homework? |
| 2 | A.     Yes. |
| 3 | Q.     And did you see her write and so on? |
| 4 | A.     Yes. |
| 5 | Q.     And did you see what hand she wrote with? |
| 6 | A.     She was right-handed. |
| 7 | Q.     Okay. |
| 8 | *   *   * |
| 9 | Q.     I wanted to show you, Ms. Hershberger, what's been marked as State's |
| 10 | proposed Exhibit 31. |
| | *   *   * |
| 11 | Q.     I'm gonna ask you if you recognize the person in that photograph. |
| 12 | A.     It's Crystal. |
| 13 | Q.     Did you take that photograph? |
| 14 | A.     Yes. |
| 15 | Q.     And how old was she in that photograph? |
| 16 | A.     I believe it was her 18th birthday? |
| 17 | Q.     Is that a true and accurate depiction of her? |
| 18 | A.     Yes. |
| 19 | |

Testimony of Kelly Hershberger, Trial Transcript, August 22, 2007, Exhibit 71, pp. 83-85 (ECF No. 30-1, pp. 84-86); *see also* Trial Transcript, August 22, 2007, pp. 109-13 (discussion regarding objection to this testimony).

This claim is meritless. The only Supreme Court precedent cited by Barraza in support of this claim is *Old Chief v. United States*, 519 U.S. 172 (1997), which is inapposite. *Old Chief* was a federal criminal case. The evidentiary issue decided by the Supreme Court in that case was governed by the Federal Rules of Evidence, Rule 403 in particular. *See Old Chief*, 519 U.S. at 178-

1  92.  There

2

3  was no issue in *Old Chief* regarding whether admission of any evidence violated the defendant's

4  federal constitutional right to due process of law, and the Court did not address any such issue.

5  "It is well settled that a state court's evidentiary ruling, even if erroneous, is grounds for

6  federal habeas relief only if it renders the state proceedings so fundamentally unfair as to violate due

7  process." *Spivey*, 194 F.3d at 977-78.  To show that improper admission of evidence violated her

8  due process rights, Barraza must demonstrate that the admission of the challenged evidence "offends

9  some principle of justice so rooted in the traditions and conscience of our people as to be ranked as

10  fundamental." *Patterson*, 432 U.S. at 202.  Barraza makes no attempt to show that the Nevada

11  Supreme Court's ruling, denying relief on this claim, was an unreasonable application of these

12  federal constitutional principles.  This Court determines that it was not.  The admission of

13  Hershberger's testimony, and through that testimony a photograph of the victim, did not render

14  Barraza's trial fundamentally unfair.

15  The Nevada Supreme Court's ruling on this claim was not contrary to, or an unreasonable

16  application of, Supreme Court precedent, and was not based on an unreasonable determination of the

17  facts in light of the evidence.  The Court will deny habeas corpus relief with respect to Claim 10.

18  Claim 12

19  In Claim 12, Barraza claims that her federal constitutional rights were violated because

20  evidence was admitted at trial concerning statements made by the victim, Crystal Wilkins, before her

21  death, in response to questions asked by a police officer, though Wilkins was not subject to

22  confrontation or cross-examination.  *See* Petition for Writ of Habeas Corpus, pp. 25-26;

23  Supplemental Brief Two in Support of Writ of Habeas Corpus, pp. 20-25.

24  Barraza made a motion before trial to suppress evidence of Wilkins' statements.  *See* Motion

25  to Suppress, Exhibit 16 (ECF No. 26-12).  The trial court denied that motion.  *See* Order, Exhibit 40

26  (ECF No. 27-10).  Barraza then filed a petition for writ of mandamus or prohibition in the Nevada

Supreme Court, seeking to prevent testimony regarding the statements made by Wilkins. *See* Petition for Writ of Mandamus or Prohibition, Exhibit 41 (ECF No. 27-11). The Nevada Supreme Court denied that petition. *See* Order Denying Petition and Motion for Stay, Exhibit 47 (ECF No. 27-17).

At trial, Barraza's counsel objected to admission of the testimony regarding statements made by Wilkins before she died, but that testimony was admitted over Barraza's objections. *See* Testimony of Kenneth Mead, Trial Transcript, August 21, 2007, Exhibit 70, p. 127 (ECF No. 29-1, p. 128).

The testimony at issue here is the testimony of Kenneth Mead, a detective with the Las Vegas Metropolitan Police Department, who responded to the scene of the stabbing. Mead testified, as follows, about what Wilkins said to him when he found her, after the stabbing, at the Silver Saddle Saloon in Las Vegas:

> Q.    And she [Crystal Wilkins] responded?
>
> A.    She did.
>
> Q.    What did she say?
>
> A.    I asked her name. She told me her name was Crystal. I asked her if she knew where she was at, and she told me she was at the Silver Saddle. I asked her what happened and she stated I can't believe the bitch stabbed me. I can't believe she did this. I asked her if she know who -- if she knew who did this, and she told me the girl's name was Jessica. I asked her her last name and she said Parraza or Barraza. I asked her again, and again she said Parraza or Barraza. So I took it to mean one of those two. She told me that -- the only thing she could recall her wearing was a red tank top. And she just kept repeating to me, my god, you can't believe how much this hurts. You can't believe how much my stomach hurts. So I tried to comfort her, and, like I said, when I arrived the fire department was arriving at the same time so I backed off and let them handle the medical care.

Testimony of Kenneth Mead, Trial Transcript, August 21, 2007, Exhibit 70, pp. 127-28 (ECF No. 29-1, pp. 128-29).

On her direct appeal, Barraza asserted a claim that her constitutional rights were violated on account of the admission of this testimony. *See* Appellant's Opening Brief, Exhibit 91, pp. 20-25 (ECF No. 34-7, pp. 32-37). The Nevada Supreme Court denied the claim without discussion. *See*

Order of Affirmance, Exhibit 2, p. 1 n.1 (ECF No. 11-2, p. 2).

In *Crawford v. Washington*, 541 U.S. 36 (2004), the United States Supreme Court held that the Confrontation Clause of the Sixth Amendment bars the admission of out-of-court "testimonial" statements except when the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. *See Crawford*, 541 U.S. at 53-54. The Supreme Court reasoned that the Confrontation Clause was "most naturally read as a reference to the right of confrontation at common law, admitting only those exceptions established at the time of founding." *Id*. at 54. The Supreme Court noted that at common law there was an exception to the hearsay rule allowing admission of dying declarations in criminal cases, even where the dying declarations were testimonial. *Id*. at 56 n. 6. The Supreme Court, however, declined to decide whether the Sixth Amendment incorporates the exception for testimonial dying declarations. *Id*.

The Supreme Court has not clearly established that admission of a testimonial dying declaration violates the Confrontation Clause. *See Michigan v. Bryant*, 562 U.S. 344, 351 n. 1 (2011); *Crawford*, 541 U.S. 36, 56 n. 6 (declining to decide whether the Confrontation Clause "incorporates an exception for testimonial dying declarations"). Therefore, Barraza does not show that the Nevada Supreme Court's decision, denying relief on this claim, was contrary to, or an unreasonable application of, *Crawford*, or any other clearly established Supreme Court precedent, or that it was unreasonable in light of the evidence. The Court will deny relief on Claim 12.

Claim 13

In Claim 13, Barraza claims that her federal constitutional rights were violated because she was not sentenced under the amended version of NRS 193.165. *See* Petition for Writ of Habeas Corpus, pp. 27-28; Supplemental Brief Two in Support of Writ of Habeas Corpus, pp. 43-49. NRS 193.165 governs the sentence enhancement for use of a deadly weapon. Barraza concedes that the amended version of that statute, which she claims should have been applied in her case, became effective on July 1, 2007, almost two years after she killed Wilkins, but before she was tried. *See*

1    Reply, p. 39, lines 21-22 ("It went into effect on July 1, 2007.").

2

3        Before her sentencing, Barraza submitted to the trial court a brief in support of application of

4    amended NRS 193.165.  *See* Defendant's Brief, Exhibit 80 (ECF No. 32-5).  The State filed an

5    opposition to that motion.  *See* State's Opposition, Exhibit 82 (ECF No. 32-7).  The parties

6    presented argument, and the court denied the motion.  *See* Transcript of Sentencing, October 25,

7    2007, Exhibit 85, pp. 2-4 (ECF No. 34-1, pp. 3-5).

8        On her direct appeal, Barraza asserted a claim that her constitutional rights were violated

9    because the trial court did not sentence her under amended NRS 193.165.  *See* Appellant's Opening

10   Brief, Exhibit 91, pp. 43-49 (ECF No. 34-7, pp. 55-61).  The Nevada Supreme Court denied the

11   claim without discussion.  *See* Order of Affirmance, Exhibit 2, p. 1 n.1 (ECF No. 11-2, p. 2).

12       This claim is without merit.  The Nevada Supreme Court's construction of NRS 193.165,

13   concluding that the amendments to that statute did not apply to a defendant who committed her

14   crime almost two years before the amended version of the statute went into effect, is a matter of state

15   law, beyond the scope of this federal habeas review.  *See Estelle*, 502 U.S. at 67-68 ("[I]t is not the

16   province of a federal habeas court to reexamine state-court determinations on state law questions. In

17   conducting habeas review, a federal court is limited to deciding whether a conviction violated the

18   Constitution, laws, or treaties of the United States."); *see also Bradshaw*, 546 U.S. at 76 ("[A] state

19   court's interpretation of state law … binds a federal court sitting in habeas corpus.").  Barraza makes

20   no colorable argument that the Nevada Supreme Court's construction of NRS 193.165 in this

21   manner violated her federal constitutional rights, or that the ruling of the Nevada Supreme Court

22   was contrary to, or an unreasonable application of, any clearly established Supreme Court precedent,

23   or that it was unreasonable in light of the evidence.  The Court will deny relief on Claim 13.

24       Certificate of Appealability

25       The standard for issuance of a certificate of appealability calls for a "substantial showing

26   of the denial of a constitutional right."  28 U.S.C. § 2253(c).  The Supreme Court has interpreted

28 U.S.C. § 2253(c) as follows:

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward:  The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074, 1077-79 (9th Cir. 2000).  The Supreme Court further illuminated the standard in *Miller-El v. Cockrell*, 537 U.S. 322 (2003).  The Court stated in that case:

> We do not require petitioner to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus.  Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail.  As we stated in *Slack*, "[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."

*Miller-El*, 537 U.S. at 338 (quoting *Slack*, 529 U.S. at 484).  The Court has considered each of Barraza's claims with respect to whether they satisfy the standard for issuance of a certificate of appeal, and determines that none of them do.  The Court will deny Barraza a certificate of appealability.

**IT IS THEREFORE ORDERED** that the Petition for Writ of Habeas Corpus in this case (ECF No. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that petitioner is denied a certificate of appealability.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall **ENTER JUDGMENT ACCORDINGLY**.

Dated: August 2, 2017.

_____
UNITED STATES DISTRICT JUDGE

28